# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUDREY DERUSSEAU,<br><br>　　　　　　　　　　　Plaintiff,<br>　vs.<br><br>BANK OF AMERICA, N.A.; et al.,<br><br>　　　　　　　　　　　Defendants. | CASE NO. 11 CV 1766 MMA (JMA)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>[Doc. No. 15] |

On October 14, 2011, Defendant Bank of America, N.A., as successor by merger to BAC Home Loans Servicing, L.P., ("BAC" or "Defendant") filed a motion to dismiss Plaintiff Audrey Derusseau's first amended complaint ("FAC") for failure to state a claim upon which relief can be granted. [Doc. No. 15.] On November 1, 2011, Defendant Federal Home Loan Mortgage Corporation ("Freddie Mac") joined BAC's motion to dismiss. [Doc. No. 21.] Plaintiff filed an opposition to Defendant's motion to dismiss [Doc. No. 18], and Defendant filed a reply [Doc. No. 23]. On November 22, 2011, the Court deemed the matter suitable for decision on the papers and without oral argument pursuant to Civil Local Rule 7.1(d)(1). [Doc. No. 26.] For the reasons set forth below, the Court **GRANTS** Defendant's motion to dismiss.

///

## BACKGROUND

This action arises out of foreclosure-related events with respect to Plaintiff's real property, located at 2235 Cliff Street, San Diego, California 92116 (the "Property"). [FAC, Doc. No. 11 ¶6.][1] On or about April 2, 2007, Plaintiff executed a promissory note ("Note") to obtain a loan from Bank of America, secured by a Deed of Trust, to purchase the Property. [*Id.* ¶28.] The Deed of Trust names PRLAP, Inc. as the trustee. [Doc. No. 11-4, Exh. D, p.15.] In March 2009, "Plaintiff initiated loan modification negotiation efforts with BAC Servicing" to lower her monthly payments. [FAC ¶37.] Plaintiff alleges BAC offered her a forbearance plan in April 2009, but abruptly cancelled it without explanation in November 2009. [*Id.* ¶38.] Plaintiff asserts her repeated attempts to tender her monthly loan payments were denied [*Id.* ¶40]; Plaintiff later defaulted on her loan on July 1, 2009. [Doc. No. 15-1, Exh A, p.6.]

Plaintiff alleges she sent BAC a Qualified Written Request ("QWR") on May 18, 2011 inquiring about her debt obligations. [FAC ¶41.] According to Plaintiff, BAC failed to respond to her QWR as required by 12 U.S.C. section 2605(e). [*Id.* ¶41.] Despite her interactions with BAC, Plaintiff alleges BAC and Freddie Mac are "third-party strangers" to her loan, because she cannot locate a recorded assignment in the public record that memorializes the purported transfer. [FAC ¶¶30, 42.] Plaintiff therefore contends Freddie Mac and BAC have no authority to demand loan payments or initiate foreclosure proceedings. [*Id.* ¶¶30, 44, 46.]

Plaintiff alleges her Note was "*supposed* to be sold and transferred into a trust pool ("Securitized Trust")," but Bank of America failed to properly endorse and transfer her Note and Mortgage to Freddie Mac or BAC. [*Id.* ¶16 (emphasis in original); *see id.* ¶¶26, 30.] Accordingly, her Note was not securitized and the Securitized Trust pool obtained no interest in her Note. [*Id.* ¶26.] Plaintiff therefore alleges that none of the Defendants can enforce her Note because "they failed to properly abide by the requirements of the Trust Agreement governing the creation of the Securitized Trust, in which they claim they deposited" her mortgage loan. [*Id.* ¶48.]

///

---

[1] Because this matter is before the Court on a motion to dismiss, the Court must accept as true the allegations of the complaint in question. *Hospital Bldg. Co. v. Rex Hospital Trustees*, 425 U.S. 738, 740 (1976). All facts cited are taken from Plaintiff's FAC unless otherwise noted.

Finally, Plaintiff alleges Freddie Mac and BAC fraudulently and deceptively provided Plaintiff false information about her payment obligations, and they failed to correctly apply payments made, calculate interest, and manage fees charged to Plaintiff's account. [*Id.* ¶51.] Plaintiff asserts Defendants' conduct constitutes an illegal and fraudulent attempt to collect on her debt, and has caused her significant harm. As a result of Defendants' alleged conduct, Plaintiff initiated this action on August 8, 2011, and filed her FAC on September 27, 2011. Plaintiff's FAC alleges ten causes of action for: (1) Declaratory Relief under 28 U.S.C. §§ 2201 and 2202; (2) Negligence; (3) Quasi Contract; (4) Violation of the Truth in Lending Act, 15 U.S.C. § 1641(g); (5) Violation of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e); (6) Violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692(e); (7) Violation of California Business and Professions Code §§ 17200 *et seq.*; (8) Breach of Contract; (9) Breach of the Implied Covenant of Good Faith and Fair Dealing; and (10) Accounting. [Doc. No. 11.] Defendant moves to dismiss Plaintiff's entire FAC under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

## LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of [her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks, brackets and citations omitted).

In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). Legal conclusions need not be taken as true merely because they are cast in the form of factual allegations. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987); *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). Similarly, "conclusory allegations of law and unwarranted inferences are not

sufficient to defeat a motion to dismiss." *Pareto v. Fed. Deposit Ins. Corp.*, 139 F.3d 696, 699 (9th Cir. 1998).

In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint for additional facts, e.g., facts presented in plaintiff's memorandum in opposition to a defendant's motion to dismiss or other submissions. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th Cir. 1998); *see also* 2 Moore's Federal Practice, § 12.34[2] (Matthew Bender 3d ed.) ("The court may not . . . take into account additional facts asserted in a memorandum opposing the motion to dismiss, because such memoranda do not constitute pleadings under Rule 7(a)."). A court may, however, consider items of which it can take judicial notice without converting the motion to dismiss into one for summary judgment. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994).

Defendant filed a Request for Judicial Notice concurrently with its motion to dismiss. [Doc. No. 15-1.] Plaintiff objects to Defendant's request on the ground that the Court may take judicial notice of the existence of the documents, but not the truth of the facts contained therein. [Doc. No. 18, p.4-5.] In support, Plaintiff cites California law. [*Id*.] Federal law, however, governs whether judicial notice is appropriate in this action. *In re Turnstone Sys. Sec. Litig.*, 2003 U.S. Dist. LEXIS 26709 *105 (N.D. Cal. Feb. 4, 2003) ("Federal Rule of Evidence 201 governs judicial notice in federal court") (citing Fed. R. Evid. 201). Under Federal Rule of Evidence 201(b), judicial notice may be taken of *facts* that are "not subject to reasonable dispute" because they are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Applying Rule 201(b), federal courts routinely take judicial notice of facts contained in publically recorded documents, including Deeds of Trust, Substitutions of Trustee, and Notices of Defaults, because they are matters of public record, and are not reasonably in dispute. *See, e.g., Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (quoting *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986)); *Lingad v. IndyMac Fed. Bank*, 682 F. Supp. 2d 1142, 1146 (E.D. Cal. 2010); *Vogan v. Wells Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS 132944 *6-8 (E.D. Cal. Nov. 17, 2011); *Tiqui v. First Nat'l Bank of Arizona*, 2010 U.S. Dist. LEXIS 33326 *2 n.2 (S.D. Cal. April 5, 2010).

Here, Defendant requests judicial notice of two publically recorded documents. Plaintiff does not identify any particular fact contained within the documents that is reasonably subject to dispute, and instead, summarily challenges the authenticity of the documents because Plaintiff could not locate them in the public record. [Doc. No. 10, p.5.] Accordingly, based on the current record the Court does not find the records are reasonably in dispute, and therefore **GRANTS** Defendant's request for judicial notice.

## DISCUSSION

The Court addresses Plaintiff's three federal claims before turning to her seven state-based causes of action.

**I.  REAL ESTATE SETTLEMENT PROCEDURES ACT, 12 U.S.C. § 2605(e)**

In her fifth cause of action—brought only against BAC—Plaintiff alleges BAC violated section 2605(e) of the Real Estate Settlement Procedures Act ("RESPA") by failing to respond to her Qualified Written Request ("QWR"), sent on May 18, 2011. [FAC ¶¶99-107; Exh. A.] Although Plaintiff provides sparse allegations to support her RESPA claim, she has attached her QWR as Exhibit A to her FAC. On its face, Plaintiff's May 18, 2011 letter is plainly not a QWR as contemplated by section 2605(e)(1)(B).

Section 2605(e)(1)(B) defines "Qualified written request" as:

> [A] written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that-
>   (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
>   (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

Plaintiff's purported QWR, however, demands a laundry list of information without identifying the reason Plaintiff believes her account is in error. Although the letter references servicing in passing and provides her name, loan number, and property address, Plaintiff's requests are not related to the servicing of the loan, but rather more generally to the allegations of predatory schemes in the mortgage industry. For example, the second paragraph of the letter states:

> This letter concerns sales and transfers of mortgage servicing rights; deceptive and fraudulent serving practices to enhance balance sheets;

1
2
> deceptive; abusive, and fraudulent accounting tricks and practices that may have also negatively affected any credit rating, mortgage account and/or the debt or payments that my clients may be legally obligated to.

3  [FAC, Exh. A, p.1.]  The letter goes on to demand over-broad categories of information, including,
4  "[a] complete life of loan transactional history;" "[t]he Transaction Codes for the software
5  platform of the Servicer;" and "[t]he Key Loan Transaction history, bankruptcy work sheet (if
6  any), or any summary of all the accounts in an XL spreadsheet format." [*Id*. at p.1-2.]  Because
7  Plaintiff effectively demands anything that relates to her loan, from its inception in 2007 through
8  May 2011, her letter does not assist BAC to identify and investigate the purported discrepancies.
9  Such broad requests for information related generally to Plaintiff's loan are not covered by section
10 2605.

11       Section 2605 only requires loan servicers to respond to a proper QWR by correcting the
12 account discrepancy, explaining why the account is correct, or if the information is unavailable, by
13 providing contact information for someone who can assist the borrower with her inquiry.  *See* 12
14 U.S.C. §§ 2605(e)(2)(A)-(C).  Thus, even if Plaintiff's May 18 letter was otherwise a proper
15 QWR, her requests far exceed the scope of information BAC is required to provide in response.
16 BAC has no obligation to provide Plaintiff the extraordinary amount of information she requested
17 in the May 18, 2011.

18       Lastly, Plaintiff's FAC fails to adequately allege she suffered damages as a result of BAC's
19 conduct.  Under section 2605(f)(1), at a minimum, Plaintiff must allege the "actual damages" she
20 suffered as a result of BAC's failure to respond to her QWR.  *See Sanchez v. Bear Stearns*
21 *Residential Mortgage Corp.*, 2010 U.S. Dist. LEXIS 46043 *11-12 (S.D. Cal.) (citing *Garcia v.*
22 *Wachovia Mortgage Corp.*, 676 F. Supp. 2d 895, 909 (C.D. Cal. 2009)); *Garibay v. American*
23 *Home Mortgage Corp.*, 2010 U.S. Dist. LEXIS 29071 *6-9 (S.D. Cal.).  Plaintiff's vague
24 conclusory allegations that she suffered damages including, "the over calculation and overpayment
25 of interest on [her] loan, the costs of repairing Plaintiff's credit, the reduction and/or elimination of
26 [her] credit limits, costs associated with removing the cloud on her Property Title and setting aside
27 the trustee's sale, and attorneys' fees and costs," are insufficient, as they do not identify any
28

1 specific identifiable damages Plaintiff suffered as a result of BAC's failure to respond. *See* 12
2 U.S.C. § 2605(f)(1). General allegations of harm are insufficient.

3 Because Plaintiff's letter does not qualify as a QWR under section 2605(e), and she does
4 not identify the actual damages she suffered, Plaintiff has failed to state a RESPA violation.
5 Moreover, the Court concludes leave to amend would be futile because Plaintiff's underlying letter
6 is not a QWR, and therefore cannot serve as the basis for a RESPA violation.

7 **II.    TRUTH IN LENDING ACT, 15 U.S.C. § 1641(g)**

8 Defendant moves to dismiss Plaintiff's fourth cause of action for violations of the Truth in
9 Lending Act ("TILA") on the grounds that Plaintiff has not pled sufficient facts to trigger
10 protection under the statute, nor demonstrated detrimental reliance. [Doc. No. 15, p.6-7.] Plaintiff
11 does not defend her TILA claim in her opposition to Defendant's motion to dismiss. [*See* Doc.
12 No. 18.]

13    **(A)    BAC**

14 As a preliminary matter, the Court notes Plaintiff's FAC purports to bring a TILA claim
15 against Freddie Mac and BAC, but the entirety of her allegations concern Freddie Mac's conduct;
16 the FAC contains no allegations regarding BAC's alleged conduct in violation of TILA. [FAC
17 ¶¶83-98.] "TILA makes it clear that a servicer shall not be treated as the owner of the obligation
18 for purposes of this section on the basis of an assignment of the obligation from the creditor or
19 another assignee to the servicer solely for the administrative convenience of the servicer in
20 servicing the obligation." *Banut v. BAC Home Loans Servicing*, LP, 2011 U.S. Dist. LEXIS
21 125130 *2-4 (E.D. Cal. Oct. 28, 2011). Accordingly, because Plaintiff alleges BAC is a mortgage
22 servicer and provides no indication she could amend her complaint to state a viable claim against
23 this Defendant, this claim against BAC is dismissed with prejudice.

24    **(B)    Freddie Mac**

25 Section 1641(g) of TILA requires a purchaser or assignee of a mortgage loan to notify the
26 borrower of the transfer within thirty days. 15 U.S.C. § 1641(g). According to Plaintiff,
27 Defendants contend Plaintiff's loan was transferred to Freddie Mac, but Freddie Mac never
28 provided Plaintiff the written notice of transfer required by section 1641(g). [FAC ¶87, 91.]

1 Plaintiff therefore disputes that an effective transfer occurred, and maintains that any purported
2 transfer was procedurally flawed and invalid. As pled, however, Plaintiff's TILA claim cannot
3 survive Defendant's motion to dismiss. Plaintiff makes only conclusory allegations that she did
4 not receive the notice required by section 1641(g), and she fails to provide any factual allegations
5 regarding when the purported transfer occurred, or why Freddie Mac is subject to TILA's notice
6 requirements. Indeed, if Freddie Mac is a stranger to Plaintiff's loan as she contends, then Freddie
7 Mac has no obligation to comply with TILA's notice requirements. Accordingly, Plaintiff's TILA
8 claim against Freddie Mac is dismissed without prejudice for failure to state a claim upon which
9 relief can be granted.

10 **III.    FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. § 1692 et seq.**

11 Plaintiff's sixth cause of action for violations of the Fair Debt Collection Practices Act
12 ("FDCPA") alleges Freddie Mac and BAC illegally and fraudulently attempted to collect on
13 Plaintiff's loan obligation in violation of 15 U.S.C. section 1692. [FAC ¶¶108-111.] Defendant
14 argues Plaintiff's FDCPA claim should be dismissed because the Act does not apply to
15 foreclosure-related activities, Plaintiff does not allege Defendants are "debt collectors" within the
16 meaning of the statute, and Plaintiff's allegations do not identify any specific improper debt
17 collection activities. [Doc. No. 15, p.8-10.] The Court agrees.

18 Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt
19 collectors." 15 U.S.C. § 1692(e). It is well-established the FDCPA only applies to "debt
20 collectors," defined as either: (1) a person whose principal business is the collection of debts
21 "(whether on behalf of himself or others); or (2) a person who regularly collects debts on behalf of
22 others (whether or not it is the principal purpose of his business)." *Izenburg v. ETS Servs.*, 589 F.
23 Supp. 1193, 1999 (C.D. Cal. 2008) (internal marks omitted). Here, Plaintiff does not allege
24 Freddie Mac or BAC is a debt collector within the meaning of the FDCPA.

25 In addition, Plaintiff must allege Defendants engaged in debt collection activities, which
26 she fails to do. *Id*. (noting "foreclosing on a property pursuant to a deed of trust is not the
27 collection of a debt within the meaning of the FDCPA"). Instead, Plaintiff's FAC contains only
28 legal conclusions, unsupported by factual allegations. For example, she asserts Freddie Mac and

1  BAC "falsely represented the status of her debt," they threatened to take illegal collection

2  activities, and they attempted to collect on Plaintiff's Note under false pretenses. [FAC ¶110.]

3  Plaintiff fails to identify any specific actions taken by the individual Defendants, and otherwise

4  fails to allege conduct that would impose liability against Freddie Mac or BAC under the FDCPA.

5  Accordingly, Plaintiff's sixth cause of action for violations of the FDCPA is subject to dismissal

6  without prejudice.

**IV.  NEGLIGENCE**

Plaintiff's second cause of action alleges Freddie Mac and BAC breached their duty to Plaintiff "when they failed to follow guidelines established in the Trust Agreement requiring the transfer of the Note and Deed of Trust into the Securitized Trust by the Closing Date." [FAC ¶76.] Defendant asserts Plaintiff fails to allege any cognizable duty of care owed it to Plaintiff because lenders and servicers generally do not owe borrowers a duty of care. *See Nymark v. Heart Fed. Sav. & Loan Assoc.*, 231 Cal. App. 3d 1089, 1095-96 (1991); *Castaneda v. Saxon Mortgage Servs.*, 687 F. Supp. 2d 1191, 1198 (E.D. Cal. 2009). Plaintiff does not dispute this general principle, but instead argues Defendants' conduct falls within an exception because her relationship with them is unconventional. [Doc. No. 18, p.7.] For example, Plaintiff argues Bank of America is not acting as a conventional lender because it is a bank acting as a servicer for a trustee of a Trust. [Doc. No. 18, p.7.] The FAC, however, does not bear out this purported unconventional relationship.

Plaintiff's allegations regarding the Securitized Trust and Trust Agreement, which appear to form the basis of the asserted unconventional relationship, are unclear and seemingly inconsistent.[2] On the one hand, Plaintiff asserts the Securitized Trust that purportedly owns her Note and Mortgage were dissolved after Freddie Mac and others received mortgage insurance payouts, which covered the outstanding debt obligations. [FAC ¶20.] On the other hand, Plaintiff

---

[2] Plaintiff's allegations largely resemble those present in *Roque v. Suntrust Mortg., Inc.*, 2010 U.S. Dist. LEXIS 11546 *6-9 (N.D. Cal. Feb. 10, 2010), where the plaintiff challenged his promissory note's unclear chain of ownership allegedly created by a Pooling and Serving Agreement ("PSA"). In *Roque*, the district court noted that "[u]niformly among courts, production of the note is not required to proceed in foreclosure and similarly no production of any chain of ownership is required. *Id.* at *8 (citations omitted). Thus, Plaintiff's underlying theory that she has been inexplicably harmed by her inability to clearly identify the owner of her loan through public records is tenuous at best.

1  asserts her Note and Mortgage were not properly conveyed into the Securitized Trust because
2  Defendants failed to follow the terms of the Trust Agreement that required them to transfer her
3  loan by the Closing date. [FAC ¶¶27, 76.] If Defendants failed to transfer Plaintiff's loan into the
4  Securitized Trust, any insurance payments made toward mortgages in the Trust would have no
5  bearing on Plaintiff's debt obligations, nor would the Defendants be subject to the terms of the
6  Trust. Plaintiff further confuses the matter by stating, she "does not allege or assert she is the
7  beneficiary or party to the [Trust Agreement]. Rather, Plaintiff alleges that the failure to securitize
8  her Note makes it impossible for Freddie Mac, the Securitized Trust, and/or BAC Servicing to
9  claim, allege or assert that it was assigned, transferred or granted Plaintiff's Note or Mortgage, or
10 any interest therein, in any manner whatsoever." [*Id.* ¶34.] While Plaintiff may plead alternative
11 theories of liability, she must do so in a clear and concise manner that puts Defendants on notice as
12 to the claims against them. Accordingly, the Court concludes Plaintiff's negligence claim, as pled,
13 fails to state a claim upon which relief may be granted and is subject to dismissal without
14 prejudice.

15 **V.   QUASI CONTRACT**

16        In her third cause of action, Plaintiff alleges Freddie Mac and BAC were unjustly enriched
17 because they collected Plaintiff's monthly mortgage payments for over four years even though her
18 loan was never properly assigned to these Defendants. [FAC ¶¶79-80.] Plaintiff asserts her
19 original lender, Bank of America, sold her loan to an unknown entity. Therefore Bank of
20 American could not effectively transfer Plaintiff's loan to Freddie Mac or BAC because the
21 proceeds of the sale fulfilled the balance due on the Note. [*Id.* ¶81.] Through her quasi contract
22 claim, Plaintiff seeks restitution for the mortgage payments she allegedly paid to Freddie Mac and
23 BAC. *See Otworth v. So. Pac. Trans. Co.*, 166 Cal. App. 3d 452, 460 (1985) ("[t]he theory of
24 unjust enrichment requires one who acquires a benefit which may not justly be retained, to return
25 either the thing or its equivalent to the aggrieved party so as not to be unjustly enriched").

26        The FAC does not, however, allege Plaintiff made any mortgage payments to Freddie Mac.
27 Therefore, Plaintiff has not stated a claim for unjust enrichment against Freddie Mac. With
28 respect to BAC, Plaintiff alleges she initiated a loan modification with BAC in March 2009, but in

or around November 2009 BAC refused to accept any further payments. [*Id.* ¶¶37-38.] Plaintiff asserts she made every effort to make her mortgage payments but Defendants denied her that opportunity.[3] [*Id.* ¶40.] Plaintiff then contradicts these allegations by asserting that "Freddie Mac and/or BAC Servicing demanded monthly mortgage payments from Plaintiff starting in April 2, 2007, and continued to collect payments from Plaintiff for approximately four and a half years." [*Id.* ¶79.]

Based on Plaintiff's allegations, the Court cannot decipher whether BAC refused to accept Plaintiff's mortgage payments after November 2009, or Defendants continued to collect payments from Plaintiff for four and one half years—until October 2011. Plaintiff's ambiguous, contradictory allegations fail to state a claim for quasi contract against Freddie Mac or BAC because they do not indicate Defendants obtained money from Plaintiff to which they were not entitled. Plaintiff's quasi contract claim is therefore subject to dismissal without prejudice.

**VI.    BREACH OF CONTRACT**

Plaintiff's eighth cause of action for breach of contract alleges Defendants breached their agreement with Plaintiff when they failed to apply Plaintiff's mortgage payments as required by the terms of Section 2 of the Deed of Trust. [FAC ¶¶134-136.] Plaintiff does not, however, allege any identifiable conduct by Defendants. Plaintiff fails to assert which payments Defendants improperly allocated, when the incorrect application occurred, how many times payments were not credited properly, or even generally why she believes her account is in error. Although Plaintiff need not provide detailed allegations of every error Defendants allegedly made, she must do more than provide a formulaic recitation of the elements to state a breach of contract claim. *Twombly*, 550 U.S. at 555. Accordingly, because Plaintiff's allegations are entirely conclusory they cannot survive Defendant's motion to dismiss, and her breach of contract claim is subject to dismissal without prejudice.

/ / /

---

[3] Throughout the FAC Plaintiff indiscriminately uses "Defendant" and "Defendants" interchangeably. In her amended complaint, Plaintiff must identify which defendant(s) took which particular actions to comply with federal pleading standards and provide each Defendant with notice of the claim(s) alleged against it.

### VII. BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

Plaintiff's ninth claim for breach of the implied covenant of good faith and fair dealing is premised on Plaintiff's alleged contractual relationship with Defendants embodied in the Deed of Trust. [FAC ¶¶140-144.] "Under California law, a claim for breach of the implied covenant of good faith and fair dealing is necessarily based on the existence of an underlying contractual relationship. The essence of the covenant is that no party to the contract will do anything which would deprive the others of the benefits of the contract." *Gomez v. Wells Fargo Home Mortg.*, 2011 U.S. Dist. LEXIS 134092 *27 (N.D. Cal. Nov. 21, 2011) (internal marks and citations omitted). Plaintiff asserts Defendants "breached their duty of good faith by unfairly interfering with Plaintiff's right to receive the benefits of the contract, including holding equity in her Property, and by improperly assessing and applying her mortgage payments according to the Deed of Trust." [FAC ¶144.] Once again, however, Plaintiff's claims are conclusory and unsubstantiated by factual allegations that describe the conduct at issue. To survive a motion to dismiss, Plaintiff must identify the conduct that has frustrated her right to enjoy the benefit of the contract. *Gomez*, 2011 U.S. Dist. LEXIS at *28. Because Plaintiff has not done so, her ninth cause of action is subject to dismissal without prejudice.

### VIII. ACCOUNTING

Plaintiff alleges she is entitled to an accounting because she made mortgage payments to Defendants for approximately four and one half years in reliance on Defendants' erroneous representations that they were entitled to the payments. [FAC ¶¶148-149.] However, "[a] request for a legal accounting must be tethered to relevant actionable claims." *Hafiz v. Greenpoint Mortg. Funding, Inc.*, 652 F. Supp. 2d 1039, 1043 (N.D. Cal. 2009). Because each of Plaintiff's claims is subject to dismissal she has not "anchored her request to any viable claims" and her accounting claim cannot survive. *Id.* Accordingly, Plaintiff's tenth cause of action is subject to dismissal without prejudice.

### IX. CALIFORNIA BUSINESS AND PROFESSIONS CODE

Plaintiff's seventh cause of action for violation of California Business and Professions Code sections 17200 *et seq.* is grounded on the entirety of Defendants' conduct described in

1  Sections I-VII, *supra*. [*See* FAC ¶112-125.] California's unfair competition law ("UCL") defines
2  "unfair competition . . . [as] any unlawful, unfair, or fraudulent business act or practice." Cal. Bus.
3  & Prof. Code § 17200. "The UCL incorporates other laws and treats violations of those laws as
4  unlawful business practices independently actionable under state law. Violation of almost any
5  federal, state, or local law may serve as the basis for a UCL claim. In addition, a business practice
6  may be unfair or fraudulent in violation of the UCL even if the practice does not violate any law."
7  *Bertolina v. Wachovia Mortg*., 2011 U.S. Dist. LEXIS 87937 *13 (N.D. Cal. Aug. 9, 2011)
8  (internal marks and citations omitted).

9  To the extent Plaintiff's UCL claim is based on purported violations of state or federal law,
10 her claim is subject to dismissal because Plaintiff has failed to adequately allege any underlying
11 predicate violations. In addition, Plaintiff has not adequately pled an independent UCL claim for
12 unfair or fraudulent business practices because the FAC fails to allege sufficient facts to support
13 any identifiable wrongdoing by specific Defendants. Plaintiff's conclusory allegations of
14 misconduct cannot survive Defendant's motion to dismiss.

15 **X.    DECLARATORY RELIEF**

16 Likewise, Plaintiff's first cause of action for declaratory relief under 28 U.S.C. sections
17 2201 and 2202 is subject to dismissal because Plaintiff has not sufficiently pled an underlying
18 controversy between the parties. *See American States Ins. Co. v. Kearns*, 15 F.3d 142, 143-144
19 (9th Cir. 1994). The Declaratory Judgment Act ("DJA") is merely a procedural statute and does
20 not provide an independent theory for recovery. *Team Enterprises, LLC v. Western Inv. Real*
21 *Estate Trust,* 721 F. Supp. 2d 898, 911 (E.D. Cal. 2010) (citations omitted). Rather, where the
22 plaintiff has stated an underlying claim for relief, the DJA merely offers the plaintiff an additional
23 remedy. *Id.* Accordingly, where as here, the plaintiff has not adequately pled an underlying
24 claim for relief, her declaratory relief claim cannot stand alone, and is therefore subject to
25 dismissal. *See id.* ("declaratory relief claim falls with the demise of . . . other claims and the
26 absence of a cognizable justiciable controversy").

27

28 / / /

## CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendant's motion to dismiss [Doc. No. 15], and **ORDERS** as follows:

(i) Plaintiff's first, second, third, sixth, seventh, eighth, ninth and tenth causes of action are **DISMISSED WITHOUT PREJUDICE** and with leave to amend.

(ii) Plaintiff's fourth cause of action for violations of TILA is **DISMISSED WITH PREJUDICE** as to Defendant BAC, and **WITHOUT PREJUDICE** and with leave to amend as to Defendant Freddie Mac.

(iii) Plaintiff's fifth cause of action for violations of RESPA is **DISMISSED WITH PREJUDICE.**

(iv) If Plaintiff wishes to proceed with this action, she must file a second amended complaint that remedies the deficiencies noted above, no later than ***December 14, 2011***.

**IT IS SO ORDERED.**

DATED: November 29, 2011

*[signature]*

Hon. Michael M. Anello
United States District Judge